975 So.2d 753 (2008)
STATE of Louisiana, Appellee
v.
Rory GULLETTE, Appellant.
No. 43,032-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*756 Louisiana Appellate Project, by: William Jarred Franklin, for Appellant.
Rory Gullette, pro se.
Paul Joseph Carmouche, District Attorney, Jonathan Dhu Thompson, John Ford McWilliams, Jr. Sarah Midboe, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
DREW, J.
Rory Gullette was convicted by a jury of forcible rape and adjudicated a fourth felony habitual offender. He was sentenced to 47 years of imprisonment at hard labor, with three years to be served without benefit of parole, probation, or suspension of sentence. The defendant appeals. We affirm.

FACTS
On August 13, 2005, the 57-year-old victim, S.S.,[1] who lived alone in a mobile home in Keithville, fell asleep on her daybed while watching television. She woke up at about 1:30 a.m. to a quiet and dark house. She saw movement next to her  a man, whom she later identified as the defendant. Her arm hit and felt his pants zipper and penis. Frightened, she began struggling, but the defendant grabbed her hands and feet and told her he was not going to hurt her  all he wanted was to "make love" to her. She unsuccessfully tried to fight off the defendant. He pinned her down, pushed her arms over her head, pushed her legs apart, and touched her vagina with his mouth and fingers. The defendant attempted vaginal sexual intercourse, but didn't have enough room on the daybed, so he moved the victim to her bedroom. There the defendant made the victim lie back on the bed, held her hands over her head and again touched his mouth and fingers to her vagina. Her panties were removed and her gown was pushed up around her neck. He fondled her breasts and this time succeeded in penetrating her vagina with his penis, but he was unable to maintain an erection. He finished the attack by using his mouth and fingers on her vaginal area. The victim described the defendant's use of his fingers as "very rough," as if he were trying to put his "whole damn hand" inside her. She was afraid for her safety and unable to stop him from raping her.
The defendant wore a baseball cap decorated with gold braid, which he wore backwards during the first part of the attack, and then later turned around. After the attack, the defendant asked the victim if he could use her bathroom. The victim told him, "It's right in there." While he was in the bathroom, the victim got dressed.
The victim went into the kitchen and tightened the lightbulb that the defendant had apparently loosened to darken the *757 home, and began making coffee and smoking a cigarette. The defendant came into the living area and asked for one of her cigarettes. In an attempt to keep the situation calm and avoid further harm, the victim handed the defendant a cigarette. In the well-lit room, the victim recognized the defendant as "Rory," a regular customer of Bentley's, a convenience store where she had been employed as a cashier about ten years earlier. The victim offered him a cup of coffee, which he accepted. They conversed and smoked for about an hour. The victim asked him how he had gotten into her house and he told her she had left the door unlocked. She told him that she had not, but he insisted that she had. She ignored that and they talked about some problems he said he was having with his wife. At about 3:00 or 3:30 in the morning, the victim looked at the clock and told the defendant, "Damn, you've got to go." He asked why, and she related that she had to get up and have breakfast with some friends that morning. He said, "Oh, okay," got up and walked out the back door. He then turned and asked, "Can I come back and visit you sometime?" The victim told him, "Sure, just make it during the daytime." He then left.
The victim had been through menopause and had not had sexual intercourse in the years prior to the attack, which left her with a "raw" and painful vaginal area. The victim dumped out the defendant's coffee cup and cigarettes. She observed that other light bulbs had also been unscrewed. She later observed that the back door frame had been pried away from the door.
Afraid that the defendant would return, she purchased and installed bolt locks, a door plate, a padlock door lock, and a deadbolt. Her main concern was to repair and secure the door and to try to "forget that it happened."
The following day, August 15, 2005, the victim contacted her friend and neighbor, Tammy Hegpeth, to get the phone number of their mutual friend, Carnie Burcham. The victim asked Burcham, a criminal investigator for the Louisiana Department of Agriculture and Forestry, how to get in touch with the police to report a rape. She told Burcham that she had been raped by a man she knew as "Rory." She also informed him that she bought a gun that day to use for protection. Burcham discussed with her the "rules of engagement" and suggested that she take a gun safety course, recommending that she contact Detective Michael Escude of the Caddo Parish Sheriff's Office.
An appointment was scheduled for the next day, August 16, 2005, for the victim to meet Det. Escude at the hospital for a forensic rape examination. Chris Philbar, an expert in the area of sexual assault nurse examinations, performed the victim's physical examination. The victim's injuries included vaginal and urethral pain, abrasions and tears, as well as purple marks on her breasts and abdomen. A significant tear in the labia minora was three centimeters long. The victim was unable to tolerate a vaginal exam with a speculum because of the pain. Philbar opined that it was possible, but not probable, that the victim's injuries were sustained during consensual sex. Between the rape and the examination, the victim had taken two baths, frequently urinated, and washed the clothes she was wearing at the time of the attack. Swabs were taken for DNA testing, and blood was drawn.
Det. Escude interviewed the victim after the examination. She related the defendant's name, "Rory," and described the defendant's appearance, including his build and severe facial scars. The victim also described the defendant's clothing, including his baseball cap and big, brown work *758 boots. Det. Escude then accompanied the victim to her home, where the Caddo Parish Crime Scene Investigation Unit collected physical evidence, including the coffee cup and cigarettes from the trash, a comforter, clothing, and a tool that did not belong to the victim. The tool, which the victim had moved from the bedroom to a utility room, was determined to be a steel chainsaw tool commonly used to tighten or loosen chainsaws. The tool and the coffee cup were swabbed for forensic DNA analysis. The visible pry marks on the rear door were also observed and documented. The victim was subsequently shown a six-person photographic lineup from which she confirmed the identity of the defendant as her assailant.
The defendant was arrested while on the job at Asplundh Tree Service Company and was charged by bill of information with one count of forcible rape, in violation of La. R.S. 14:42.1(A)(1), for having vaginal and oral intercourse with the victim. His baseball cap and brown work boots were seized. The cap was later identified by the victim as the same one worn by the defendant during the attack, and the boots were identified as similar to those worn by the defendant. A buccal swab was taken from the defendant for forensic DNA analysis. After being advised of and waiving his Miranda rights, the defendant gave a recorded custodial statement to Det. Escude on August 18, 2005. The defendant explained that on the night of August 13 and the early morning hours of August 14, he was at his mother's home with his mother and wife. Det. Escude spoke to the defendant's wife, who confirmed the alibi; however, the defendant's mother did not. Det. Escude then confronted the defendant's wife, who recanted and said she lied because she wanted to protect the defendant. Det. Escude then re-interviewed the defendant, who told Det. Escude that he had forgotten that his wife had gone to her grandmother's house in Greenwood, but who maintained that he was at his mother's house during the time of the crime. Det. Escude testified that at no time during the investigation and trial preparation did he ever get information that the defendant claimed the intercourse to be consensual.
The victim made an in-court identification of the defendant as her assailant. She further denied having consensual sexual intercourse with the defendant prior to the crime, or knowing that he was married. The victim testified that she only knew the defendant because he had been a customer at Bentley's, and did not know anything about his family or marriage. She testified that she first learned that the defendant's mother, Faye, lived near her home from her conversation with Burcham, who knew the defendant and his family. However, Burcham testified that the victim remembered the defendant's name was Rory, and that he was the son of her neighbor, Faye. The victim admitted telling Det. Escude that she knew the defendant's mother's name was Faye and that she lived on the adjacent street. However, on redirect examination, the victim clarified that she learned about the defendant's mother from Burcham and later related that information to Det. Escude. DNA samples were consistent with the state's theory of the case.
A 12-person jury rendered a verdict of guilty as charged by a vote of 10 to 2. The defendant's motions for new trial and post-verdict judgment of acquittal were denied by the trial court. The defendant was charged and adjudicated to be a fourth felony habitual offender.
Before sentencing the defendant, the trial court noted that it had given both the defense and the state the benefit of knowing what the sentence would be prior to *759 arguments. The trial court then listened to the arguments of the state and defense, including the state's request that a life sentence be imposed. It then imposed the sentence of 47 years of imprisonment at hard labor, three years of which were ordered to be served without benefit of parole, probation, or suspension of sentence.[2] It noted in accordance with La. C. Cr. P. art. 894.1 that any lesser sentence would deprecate the seriousness of the defendant's crime. The trial court also specifically noted that it had looked at the defendant's prior criminal history and the previous convictions that were the basis of the habitual offender bill.
Sufficiency
The defense argues that the state failed to prove that the rape was committed "without the lawful consent of the victim." It argues that the victim's testimony that she did not know the victim's mother's name and where she lived, which was contradicted by Burcham and by Det. Escude, shows the prior relationship between the victim and the defendant was more than the victim first indicated. The defense further argues that the defendant's denial of his presence at the victim's home was to conceal an extramarital affair. It concedes that the chainsaw tool is consistent with the defendant's employment and its location at the victim's home is easily explained as having fallen out of the defendant's pocket during consensual sex. The defense argues that the victim's injuries are consistent with rough consensual sex, and the lack of injuries to her arms, legs, or ankles indicate the absence of restraint. It contends that the victim's lack of resistance to the defendant's actions are consistent with her recognizing him and consenting to his actions. The defense also points to the victim's actions in drinking coffee and smoking cigarettes with the defendant as inconsistent with a person who had just been raped, as was her failure to seek immediate help. It concludes that there was insufficient proof that the defendant used force on the victim, and based on the victim's actions, the jury was clearly wrong in not finding reasonable doubt.
The state argues that the evidence was sufficient to support the conviction because:
 the jury obviously resolved any conflict in testimony in favor of the victim;
 the defendant never denied that oral and vaginal sexual intercourse occurred;
 the only contested issue was that of lack of lawful consent, which was refuted by the victim's testimony and the forensic evidence; and
 an appellate court does not assess credibility or reweigh evidence.
The defendant was charged with forcible rape (by vaginal and oral sexual intercourse) under La. R.S. 14:42.1(A)(1), which provides in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Our law on sufficiency is well settled.[3]
*760 In this classic case of "he said, she said," the evidence is clearly sufficient, when reviewed under the Jackson standard, to support the defendant's conviction of forcible rape based on the victim's testimony alone. This one sexual assault victim's testimony, obviously believed by the trier of fact, was clearly sufficient to prove the defendant guilty. Medical, scientific, and physical evidence proved the defendant had sex with the victim. The photographs show injuries which are logically inconsistent with consensual sex. The victim explained that her actions following the rape were motivated by fear of further harm and by self-preservation. The defendant's belatedly presented defense of consent was not even mentioned in his pretrial statement to Det. Escude.
Mistrial
During the state's questioning of the victim, this exchange transpired:
Q: What was the nature of the conversation that was taking place between *761 the two of you during this time period that you're drinking coffee and smoking cigarettes with him?
A. Just basically general conversation. . . . And we talked about the so-called properties that he owned, that he had three or four different properties around, and that he had just bought two houses in Stonewall from some guy that he was going to remodel and make some money off of. And he told me something about some felony convictions or something and that 
MR. GOINS: Objection, your Honor. Ask that the jury be removed.
THE COURT: Mr. Bailiff, will you take the jury out? (Whereupon the jury exited the courtroom.)
THE COURT: Will counsel approach the bench? (Conference at the bench between the Court and counsel.)
Thereafter, defense counsel moved for a mistrial due to the victim's mention of the defendant's prior felony convictions. Both Mr. Goins and the prosecutor agreed that the victim's mention of the prior felonies was not in the police reports, nor was it in the victim's taped statement. It came as "somewhat of a surprise" to both the defense and the state. The motion for mistrial was denied. There was no admonition given to the jury because of defense counsel's concern that an admonition would draw unfair attention to the statement.
The defense argues that substantial prejudice was sustained when the victim testified about the defendant's prior convictions, and it cannot be said that the information had no effect on the verdict. It contends that a jury's knowledge of prior convictions caused it to afford less weight and credibility to his claim that the sexual contact was consensual. The defense asserts that the trial court erred in denying the motion for mistrial, and based on the substantial prejudice to the defendant, the conviction should be overturned.
The state argues that:
 if the statement is not found to be res gestae, citing State v. LeBlanc, 618 So.2d 949 (La.App. 1st Cir.1993), writ denied, 95-2216 (La.10/4/96), 679 So.2d 1372, then the proper remedy would have been an admonition, which was declined;
 the victim unequivocally identified the defendant;
 the defendant did not deny having sexual relations with the victim;
 any improper reference by the victim to other crimes did not make it impossible for the defendant to obtain a fair trial; and
 the evidence against the defendant was overwhelming.
Our law on this issue is well settled.[4]
*762 Even if technically considered res gestae, as argued by the state, the victim's statement regarding the defendant's criminal convictions was obviously a surprise to all of the parties. It is apparent from the record that the state did not know of and, therefore, never intended to offer this statement as other crimes evidence. Hence, Prieur notice requirements are not applicable in determining whether the statement was "admissible" evidence.
What was said is more accurately analyzed as "prejudicial conduct" in the courtroom by a witness, not a court official. The record does not show that the prejudicial remark of the victim made it impossible for the defendant to obtain a fair trial. An admonition under La. C. Cr. P. art. 771 *763 was declined, and unsolicited statements and spontaneous conduct of a witness are not usually grounds for a mistrial. Finally, trial error is harmless where the verdict rendered is "surely unattributable to the error," as was the case here. The record supports the trial court's denial of the motion for a mistrial.
Excessiveness
The defense cites the applicable law and argues that, given the defendant's age (36) at sentencing, the 47-year sentence was, in effect, a life sentence. It argues that the sentence was primarily based on the defendant's prior felony convictions, none of which were for violent offenses. The defense also argues that no weapons were used in the commission of the instant offense and that the victim suffered no serious physical injury. It concludes that the sentence is nothing more than the needless imposition of pain and suffering that serves no rehabilitative purpose.
The state argues that:
 the sentence is not constitutionally excessive;
 the sentence is in compliance with La. C. Cr. P. art. 894.1;
 forcible rape is listed as a crime of violence;
 the victim was emotionally traumatized;
 the defendant's conduct was outrageous, as was his audacious assertion that the sex was consensual;
 the trial court has much discretion in imposition of sentences within statutory limits;
 the sentence meets the tests of constitutionality because it does not shock the sense of justice; and
 the defendant should be thankful that the trial court did not honor the state's request for a life sentence.
Our law on review of allegedly excessive sentences is well settled.[5]
*764 As a fourth felony habitual offender convicted of forcible rape, with prior convictions of unauthorized entry of an inhabited dwelling and second offense marijuana possession, the defendant faced a sentencing range of a minimum of 40 years of imprisonment at hard labor to not more than his natural life. The defendant's 47-year hard labor sentence is legal and clearly not an abuse of discretion. When the defendant's crime and punishment are viewed in light of the harm done to society by sexual offenders in general, and to this victim in particular, it does not shock the sense of justice.
Pro Se Assignment of Error Relative to Habitual Offender Adjudication
The defendant was charged as a fourth felony habitual offender. The defense filed a motion to quash the habitual offender bill, alleging that the December 22, 1999, conviction in No. 205,508 for possession of marijuana, second offense, resulted in a double enhancement. At the habitual offender proceeding, the defense briefly argued the double enhancement issue. The state also briefly argued the contrary position, and the trial court denied the motion to quash.
This court must accept and consider a pro se or represented defendant's briefed assignments of error. La. Const. art. I, §§ 2, 19, and 22; State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466; State v. Anderson, 29,282 (La.App. 2d Cir.6/18/97), 697 So.2d 651.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Jones, 41,299 (La.App. 2d Cir.11/9/06), 942 So.2d 1215; State v. Smith, 39,698 (La.App. 2d Cir.6/29/05), 907 So.2d 192; State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The defendant now argues pro se that the trial court erred in adjudicating him a fourth felony habitual offender because it should not have relied on the December 22, 1999, conviction for the reasons that:
 he was not properly Boykinized because he was not informed of the right against self-incrimination;
 he could not have waived something he did not understand; and
 the state failed to comply with the provisions of La. R.S. 15:529.1.
Although a motion to suppress was filed and argued and denied at the trial court level, and a motion was made to preserve review of that error, it was based on a different irregularity at the trial level. Because the issue that is the basis for this pro se argument was not preserved for review on appeal, it cannot be considered here.
Even so, there was no error. The fourth felony habitual offender adjudication was based in part upon a conviction for possession of marijuana, second offense, which was by guilty plea on December 22, 1999, in No. 205,508 on the docket of the First Judicial District Court in Caddo Parish. To prove this prior conviction, the state introduced exhibits including a certified copy of the bill of information containing the defendant's fingerprints, as well as copies of the district court minutes reflecting in part that the defendant was present with counsel and "WAS INFORMED OF HIS CONSTITUTIONAL RIGHTS AS PER BOYKIN V. ALABAMA."
*765 Our law on the review of habitual offender adjudications is well settled.[6]
The minutes for the 1999 conviction reflect that the state met its burden of proving under State v. Shelton, 621 So.2d 769 (La.1993), the existence of this prior guilty plea and that defendant was represented by counsel when it was entered. The defendant, however, has not met his subsequent burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Therefore, the trial court did not err in adjudicating the defendant to be a fourth felony habitual offender based on this conviction.

ERROR PATENT
The court minutes incorrectly reflect that all of defendant's sentence was to be served without benefit of probation, parole, or suspension of sentence. The transcript reflects that only the first three years were ordered to be served without benefit of probation, parole or suspension of sentence. The trial court is instructed to correct this error in the minutes, as the transcript controls over the minutes when there is a conflict. See State v. Lynch, 441 So.2d 732 (La.1983).

DECREE
Defendant's conviction, adjudication, and sentence are AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] The trial court further ordered the defendant to register as a sex offender in accordance with applicable law.
[3] When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.

This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La. 11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35; State v. Jones, 31,613 (La.App. 2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434; State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. This is equally applicable to the testimony of victims of sexual assault. State v. Robinson, 36,147 (La.App. 2d Cir. 12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490. See also State v. Simpson, 39,268 (La.App. 2d Cir. 1/26/05), 892 So.2d 694. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra. See also State v. Johnson, 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, XXXX-XXXX (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
[4] La. C.E. art. 404 provides that evidence of other crimes, acts or wrongs is generally not admissible. When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, upon request of the defendant, the defendant's remedy is a request for an admonition or a mistrial pursuant to La. C. Cr. P. art. 771. State v. McGee, 39,336 (La.App. 2d Cir.3/4/05), 895 So.2d 780; State v. Holmes, 2002-2263 (La.App. 4th Cir.2/26/03), 841 So.2d 80.

Discretionary mistrial is authorized when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" La. C. Cr. P. art. 775. The defendant's relief in this regard is pursuant to La. C. Cr. P. art. 771 since the statement was made by a witness, and not a court official. State v. Smith, 418 So.2d 515 (La. 1982).
La. C. Cr. P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Unsolicited statements and spontaneous conduct of a witness are not usually grounds for a mistrial. La. C. Cr. P. arts. 770, 775; State v. Newman, 283 So.2d 756 (La.1973), cert. denied, 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974). Mistrial under La. C. Cr. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. State v. Smith, supra; State v. Williams, 41,731 (La.App. 2d Cir. 1/24/07), 950 So.2d 126, writ denied, XXXX-XXXX (La. 11/2/07), 966 So.2d 599. The court may grant a mistrial if it is satisfied that the admonition will not assure the defendant a fair trial, but this is within the court's great discretion and will not be disturbed absent an abuse of discretion. State v. Taylor, 30,310 (La.App. 2d Cir.2/25/98), 709 So.2d 883. Also, State v. Ellis, 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521.
Even when other crimes evidence is improperly admitted at trial, the erroneous admission is a trial error and is subject to the harmless error analysis on appeal. State v. McGee, supra; State v. Bratton, 32,090 (La. App. 2d Cir.6/16/99), 742 So.2d 896; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Trial error is harmless where the verdict rendered is "surely unattributable to the error." State v. McGee, supra; State v. Bratton, supra.
The state cites State v. LeBlanc, 618 So.2d 949 (La.App. 1st Cir. 1993), writ denied, 95-2216 (La.10/4/96), 679 So.2d 1372, in arguing that the statement can be construed as being part of the res gestae. LeBlanc was decided in part on cases interpreting La. R.S. 15:448 (res gestae), which was repealed effective January 1, 1989, when the Louisiana Code of Evidence became effective.
Evidence of other crimes, wrongs, or acts is generally inadmissible to impeach the character of the accused. La. C.E. art. 404(B); State v. Talbert, 416 So.2d 97 (La. 1982); State v. Prieur, 277 So.2d 126 (La.1973). However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or . . . [res gestae]." La. C.E. art. 404(B)(1). When the other crimes are offered for a purpose allowed under Article 404, the state is required to prove that the defendant committed these other acts by clear and convincing evidence. See State v. Davis, 449 So.2d 466 (La.1984). Additionally, the state must provide the defendant with notice before trial that it intends to offer prior crimes evidence. Prieur, supra. Even when other crimes are relevant, the probative value of unrelated offenses must be weighed against their possible prejudicial effect. Id. See State v. Blank, XXXX-XXXX (La.4/11/07), 955 So.2d 90, cert. denied, ___ U.S. ___, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
[5] The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir. 1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57, and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.

There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir. 12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App. 2d Cir. 1/24/07), 948 So.2d 379.
[6] The state's burden of proof in habitual offender proceedings under La. R.S. 15:529.1 was stated in State v. Shelton, 621 So.2d 769, 779-80 (La.1993):

If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnote omitted.)
The Louisiana Supreme Court found that it was appropriate to shift the burden to the defendant after the state makes the initial showing that the defendant made the guilty plea with the representation of counsel because there is a presumption of regularity that attaches to final judgments. State v. Shelton, supra; State v. Zeigler, 41,617 (La.App. 2d Cir. 12/20/06), 945 So.2d 946.