STEWART, J.
 

 hThe defendant, James Larry Hall, was convicted of distribution of a Schedule II controlled dangerous substance (“CDS”) and sentenced to 60 years’ hard labor without benefit of probation, parole, or suspension of sentence. The defendant now appeals his conviction on the basis of insufficiency of the evidence. Finding no merit to his insufficiency claim, we affirm.
 

 FACTS
 

 On August 31, 2006, the Shreveport Police Department was conducting “buy/ bust” operations in targeted areas of the city. Officer Lee J. Scott was working undercover in the operation. Scott drove around looking for potential drug dealers while an arrest team followed nearby in a van and used audio equipment to listen to Scott’s conversations. On the 2500 block of Dowdell Street, Scott came upon Hall and a younger man later identified as Mario Brown.
 

 Scott stopped his vehicle by the two men and asked “where everyone was.” In response, Hall asked what he wanted. Scott responded that he was looking for some “hard,” which is a street term for crack cocaine. Hall asked Scott how much he wanted, and Scott replied “a dime,” which refers to ten dollars of crack. Hall then told Brown, who had not yet spoken, that Scott wanted “a dime” and directed Brown to “come serve him.” According to Scott, Brown appeared hesitant. Hall told Brown a second time “come over here and serve him.” Brown then went up to Scott’s vehicle and sold him the crack for which Scott paid him two $5 bills that had been registered as buy money by the police. Scott then used a code word to signal to the | ^arresting officers that the drug deal was complete and drove off. Shortly after, the van drove to the location of Hall and Brown, and the officers arrested them for distribution of cocaine. Scott returned to the scene and identified the two men.
 

 The cases against both men were heard by a jury on February 13 and 14, 2007. The state presented the testimony of Officer Scott; Officer Jerry Alkire, who was one of the arresting officers from the van; and Bruce Stentz, a forensic chemist who identified the substance sold to Scott as crack cocaine, a Schedule II narcotic. Both Hall and Brown testified.
 

 Hall admitted that he was a drug addict but denied that he was selling drugs on the
 
 *216
 
 date of the “buy/bust” operation. He claimed that he had been sitting in his yard waiting on someone to pick up an old refrigerator when Brown came up to him to sell some crack. Because he had previously bought some bad crack from Brown, he declined. However, his girlfriend wanted some but did not have enough money. Hall claimed that she left to go find some money down the street and that Brown was waiting with him for her return. He said that a man, identified as Officer Scott at trial, drove up in a red Cadillac and asked if he could “get one.” Hall testified that he told Scott that he did not sell drugs and told him to ask Brown. Thereafter, Brown conducted the sale with Scott. He recounted that Scott asked if the crack was good, to which Brown responded that it was “butter.” Hall denied telling Brown to “serve” Scott. On cross by the state, Hall admitted to four prior felony convictions, including possession and distribution of drugs. However, he claimed that he had not sold drugs since 1991.
 

 | .¡Brown admitted that he wanted to sell crack to Hall but that Hall did not have money and wanted it on credit. Brown testified that Hall’s “wife” left to get some money while he and Hall waited together. According to Brown, when Scott pulled up by them, Hall went to speak with Scott and then told Brown that Scott wanted to buy “a dime.” Brown testified that he asked Hall if he knew Scott, and Hall said he did and told him twice to hurry up and sell the crack to Scott. Brown said he then sold the crack to Scott but would not have done so if Hall had not said he knew him. Brown testified that Hall influenced him to sell the crack to Scott, but that he was not selling for Hall. Brown also testified that Hall’s version of events was incorrect and denied telling Scott that the crack was “butter.” Brown testified that Hall found out what Scott wanted and how much.
 

 The jury returned verdicts of guilty as charged against both men. Polling of the jury indicated that the verdicts were unanimous.
 

 Thereafter, the state filed an habitual offender bill against Hall, alleging him to be a fourth felony offender. On May 20, 2007, the state and Hall reached a deal by which Hall pled guilty to being a third felony offender and agreed to a sentence of 60 years at hard labor without benefit of probation, parole, or suspension. The trial court informed Hall that he was still entitled to appeal his conviction for distribution of a Schedule II CDS. No timely appeal was taken on Hall’s behalf. However, through post-conviction relief, Hall obtained an out-of-time appeal by which he now challenges the sufficiency of the evidence supporting his conviction.
 

 | ¿DISCUSSION
 

 A sufficiency of the evidence argument requires this court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The
 
 Jackson
 
 standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide a vehicle for an appellate court to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0725 (La.12/11/09), 23 So.3d 913. The appellate court does not assess the credibility of witnesses or reweigh the evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. Rather, the appellate court gives great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 *217
 

 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753.
 

 In reviewing the sufficiency of the evidence, an appellate court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When viewed in this way, the facts established by the direct evidence and inferred from the circumstantial evidence |smust be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987);
 
 State v. Adkins,
 
 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232,
 
 writ denied,
 
 2006-2514 (La.5/4/07), 956 So.2d 607.
 

 When a conviction is based on circumstantial evidence, the evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. When a jury rationally rejects an exculpatory hypothesis of innocence offered by a defendant’s own testimony, an appellate court’s review of the sufficiency of the evidence is at an end unless an alternative hypothesis is sufficiently reasonable such that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Calloway,
 
 2007-2306 (La.1/21/09), 1 So.3d 417,
 
 citing State v. Captville,
 
 448 So.2d 676 (La.1984).
 

 The defendant was convicted as a principal to the distribution of a Schedule II CDS, namely, cocaine. La. R.S. 14:24 defines principals to crimes as follows:
 

 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
 

 Under La. R.S. 40:967(A)(1), it is unlawful for any person knowingly or intentionally to produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense a Schedule II CDS. Cocaine is a Schedule II CDS. La. R.S. 40:964.
 

 RFor there to be sufficient evidence to affirm Hall’s conviction for distribution of a Schedule II CDS, the state had to prove that Hall was a principal to the offense, meaning that he directly committed the act, aided and abetted Mario Brown in its commission, or directly or indirectly counseled him to commit the crime.
 

 Hall argues that the evidence did not prove he was a principal to the offense. He claims the evidence shows that he did not have any crack to sell, that he neither handed the crack to the undercover officer nor accepted money from him, and that he did not receive any benefit from the transaction. He asserts that the only evidence tying him to the drug deal was that it occurred in the vicinity of his own backyard. Hall refers to Brown’s testimony that he was not selling drugs for Hall and that they had no deal as further proof of the insufficiency of the evidence to support the conviction.
 

 We find no merit to Hall’s argument and find that the evidence more than suffices to support the jury’s verdict finding Hall guilty as charged of distribution of a Schedule II CDS. The jury heard three versions of what transpired during the drug deal. Officer Scott testified that Hall conducted the transaction by determining what he wanted and how much. Scott testified that Brown did not speak and appeared hesitant about the sale requiring Hall to tell him twice to “serve” Scott by selling the crack to him. Officer Alkire’s testimony about what he heard while moni
 
 *218
 
 toring Scott’s conversation from the arrest van corroborated Scott’s version of events. Alkire testified that he heard a male voice ask Scott what he was looking for |7and Scott reply that he was looking for “a dime.” Alkire then heard a male voice tell someone to “come serve this man a dime.” After a pause, Alkire again heard a male voice saying “come over here and serve him.”
 

 Brown’s testimony also provided support for Scott’s version in that Brown testified that Hall spoke to Scott, told him what Scott wanted, and told him to hurry up and sell to Scott. Though Brown testified that he was not selling for Hall, he also testified that Hall influenced him to sell to Scott.
 

 The jury heard the witnesses’ testimonies, weighed the evidence, and made credibility determinations. It was reasonable for the jury to have believed the testimony of Officer Scott as corroborated by Officer Alkire and Brown regarding Hall’s involvement in the drug sale. It was also reasonable for the jury to have disbelieved Hall’s version of events and reasonably reject the hypothesis of innocence presented by his testimony. The evidence established that Hall was a principal to the offense in that he negotiated the sale with Scott and prompted Brown to complete the sale by telling him twice to “serve” Scott or “hurry up.” The evidence was sufficient for the jury to find that the state proved beyond a reasonable doubt that Hall was a principal in the drug transaction.
 

 CONCLUSION
 

 Finding no merit to the sufficiency of the evidence claim we affirm Hall’s conviction and sentence.
 

 AFFIRMED.