Judgment rendered January 25, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,754-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

DAVID NEIL MCFARLIN                             Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222282

Honorable Michael Nerren, Judge

* * * * *

Douglas Lee Harville                    Counsel for Appellant

John Schuyler Marvin                    Counsel for Appellee
District Attorney

Richard Russell Ray
Assistant District Attorney

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**HUNTER, J**.

The defendant, David McFarlin, was charged by bill of indictment with first degree rape, a violation of La. R.S. 14:42(A). After a jury trial, the defendant was found guilty of the responsive charge of second degree rape. The trial court denied defendant's motion for new trial and sentenced him to serve 18 years in prison with the first two years to be served without benefit of parole, probation or suspension of sentence. Defendant's motion for reconsideration of sentence was denied. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

## FACTS

On the evening of August 21, 2019, defendant went to Rascal's Bar, located in Bossier Parish. On that date, a woman, A.D., was working as manager of Rascal's. During the evening, A.D. was drinking alcohol and she and defendant interacted briefly. Defendant had gone to the bar to hear the singer scheduled to perform that evening. When the bar was closing at approximately 1:45 a.m., A.D., Mindy Gilliam, the bartender, and defendant remained on the premises.

According to A.D., she thought everyone had left when the bar closed. While she was in the storage room getting supplies, she was startled when defendant came up behind her. A.D. said defendant placed his arm around her neck and they fell to the floor when she tried to push him away. While defendant held her down with his arm on her neck, A.D. resisted by pushing against his body and face. A.D. stated defendant then pulled down her jeans and committed several aggressive sexual acts without her consent. Defendant stood up and left the bar after A.D. said her boyfriend was on his way. A.D. reported the attack to police and she was examined at a hospital

by Jewell Lites, a sexual assault nurse examiner ("SANE"). She later identified defendant as the person who raped her.

Defendant was arrested and charged with first degree rape. After a trial, the jury unanimously found defendant guilty of second degree rape. Defendant was sentenced to serve 18 years' imprisonment, with the first two years to be served without the benefit of parole, probation or suspension of sentence. The trial court denied defendant's motions for new trial and for reconsideration of sentence. This appeal followed.

## DISCUSSION

The defendant contends the evidence presented was insufficient to support a conviction of second degree rape. Defendant argues the state failed to prove defendant's guilt because the victim's testimony was unreliable.

In assessing the sufficiency of the evidence, a reviewing court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Leger*, 17-2084 (La. 6/26/19), 284 So. 3d 609; *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416. The *Jackson* standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The appellate court does not assess the credibility of witnesses or reweigh evidence, and accords great deference to the trier of fact's decision to accept or reject witness testimony in whole or in part. *State v. Frost,*

*supra*. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the issue is the weight of the evidence, not its sufficiency. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. This principle is equally applicable to victims of sexual assault; such testimony alone is sufficient even when the state offers no medical, scientific or physical evidence to prove the commission of the offense by the defendant. *State ex rel. P.R.R., Jr.*, 45,405 (La. App. 2 Cir. 5/19/10), 36 So. 3d 1138.

Second degree rape occurs when the oral or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed when the victim is prevented from resisting by the use of force or threats of violence. La. R.S. 14:42.1(A)(1). A conviction for second degree rape requires proof defendant committed an act of oral or vaginal sexual intercourse with the victim without her lawful consent, and the victim was prevented from resisting by force or threats of physical violence. *State v. Disedare*, 19-810 (La. App. 3 Cir. 5/13/20), 298 So. 3d 342.

In the present case, the victim, A.D., testified she was working as manager of Rascal's Bar on the date of the incident. A.D. stated after arriving at the bar at approximately 7 p.m., she consumed alcohol, including three shots of whiskey, during the evening. A.D. further stated the bar closed at approximately 1:45 a.m., and those remaining were herself, the bartender and defendant. A.D. testified she felt ill at the time and was in the restroom when the bartender said she was leaving. A.D. further testified she

exited the restroom and thought everyone was gone because she did not see anyone else in the bar area. A.D. explained she then went to the storage room to get beer for stocking the cooler behind the bar. A.D. testified she was startled when defendant came up behind her in the storage room, placed his arm around her neck and said something like you know you want it. A.D. stated they fell to the floor but she did not recall the specific cause of the fall. She further stated defendant was pressing her down with his arm across her neck restricting her breathing, with her back against the floor. A.D. testified defendant was on top of her and forcibly pulled down her jeans as she struggled against him by pushing her hand against his face. A.D. further testified defendant aggressively adjusted her clothing and then committed unprovoked, undesired and unwelcome sexual acts. A.D. stated she tried to resist the attack by pushing against defendant's hip with one hand and his face with her other hand. A.D. testified she was 100 per cent positive she felt penetration.

A.D. stated she also tried to stop defendant's attack by telling him about her two boys at home. She recalled saying "don't do this" and telling defendant her boyfriend was on the way when her phone rang. A.D. testified defendant then stopped and left the bar; she further testified she was upset when calling her friend and 911. A.D. stated she resisted defendant's attack the entire time and did not consent to sex. A.D. explained she told the SANE nurse she was unsure about the penetration because she was still in shock at the time. However, A.D. testified she was certain there had been penetration as she struggled against defendant. A.D. remembered her breathing was restricted by defendant pressing his arm down against her collarbone and neck. A.D. stated defendant used actual physical force

4

against her, but did not verbally threaten violence. A.D. testified she was afraid she would never see her kids again while being attacked by defendant.

The defendant, David McFarlin, testified he went to Rascal's Bar on the evening of August 21, 2019, to hear a singer perform. Defendant stated he was introduced to A.D. at the bar by a friend. Defendant further stated he drank a number of beers while sitting at the bar during the evening. He testified by approximately 1:30 a.m., those remaining at the bar included himself, A.D. and the bartender. Defendant further testified he noticed A.D. had gone toward the restrooms and then saw the bartender walk back to the area. Defendant stated the bartender returned several minutes later and as she walked past him she put a napkin on the bar, saying something like it is your problem now. Defendant further stated he noticed an address was written on the napkin and the bartender left the bar. Defendant testified he walked back toward the restrooms looking for A.D. and through the open door of the women's room he saw her sitting on a toilet, but fully clothed. Defendant stated when he asked what was going on, A.D. reached out her arms and "lunged" toward him. Defendant further stated A.D. pushed against him with her full weight, knocking him backwards onto the concrete floor and she fell on top of him.

Defendant stated after getting up they were standing in the entrance of the storage room and A.D. then pulled his head toward her breasts. He asserted as A.D. was pulling his head down, she fell backwards to the concrete floor of the storage room and he fell on top of her. Defendant stated he scraped his knuckle on the concrete floor in the fall and there was bleeding from the cut. Defendant further stated he and A.D. began touching each other sexually. Defendant admitted adjusting A.D.'s clothing to touch

5

her in this way. Defendant testified A.D. then said "stop, no" and he stopped touching her. He stated they stood up and when he asked what changed, A.D. said only she needed her phone. Defendant testified he then gathered his belongings and drove home.

Defendant stated he was arrested later the same day and questioned by police after being advised of his rights. Defendant testified he told police during the interview he had left the bar immediately after the bartender and had denied being alone with A.D. in the bar. Defendant acknowledged he did not tell police about having any physical encounter as he had just described in his trial testimony, in which he admitted being the last person in the bar with A.D. and being with her in the storage room.

Keith Krantz, a forensic biologist, was accepted as an expert in forensic DNA analysis. Krantz testified defendant's DNA was recovered from the victim's fingernails. Krantz further testified defendant's DNA was found on the victim's neck, in a bite mark near her breast and recovered from the external genitalia, vaginal swabs and vaginal washings of the victim. Krantz opined the results of the DNA analysis are consistent with A.D.'s testimony describing slight penetration by defendant.

Defendant asserts in his brief the testimony of A.D. was unreliable because of her intoxication. Although A.D. acknowledged she did not recall some details, such as the amount of alcohol she drank, she testified she could remember the circumstances of defendant's physical attack. A.D. testified at trial, consistent with her statements to the SANE nurse and the police, defendant unexpectedly approached her from behind, wrapped his arm around her neck and then forcibly held her down by pressing his arm against her neck and chest. The SANE report noted bruises on A.D.'s neck, left

6

clavicle, right breast and right thigh, injuries which are consistent with A.D.'s description of the attack at trial. Additionally, A.D. stated to police before trial and testified at trial she did not consent to defendant's sexual acts. Based on the testimony, the jury could reasonably find A.D. was not so intoxicated as to prevent her from recalling the acts committed by defendant during the incident. Thus, defendant's contention is not persuasive.

The record shows the state presented evidence to establish defendant committed the sexual acts without A.D.'s consent as she was prevented from resisting these acts by defendant's use of force. The jury considered the physical evidence, heard the testimony and weighed the credibility of the witnesses. In reaching a verdict, the jury reasonably found the testimony of A.D. to be more credible than defendant's version of the event.

Considering the evidence presented in a light most favorable to the state, we conclude the record supports the jury's determination the state proved defendant's guilt of second degree rape beyond a reasonable doubt. In concluding the evidence reasonably supports defendant's conviction for second degree rape, we need not address the issue of first degree rape raised by defendant. This assignment of error lacks merit.

*Sentencing*

Defendant contends the trial court erred in imposing an excessive 18-year sentence. Defendant argues the record supports a less harsh sentence based on his personal characteristics.

An appellate court uses a two-pronged test to determine whether a sentence is excessive. First, the record must show the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as

7

the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. Articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with the article. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The elements which should be considered include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981).

The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of this discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Diaz*, 46,750 (La. App. 2 Cir. 12/14/11), 81 So. 3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams, supra*; *State v. Free*, 46,894 (La. App. 2 Cir. 1/25/12), 86 So. 3d 29.

Second, this court must determine whether the sentence is constitutionally excessive. A sentence can be constitutionally excessive, even when it falls within statutory guidelines if: (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in light of the harm done to society, it shocks the sense of justice; or (2) it serves no purpose other than to needlessly inflict pain and suffering. *State v.*

8

*Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

At the time of the offense, the penalty for second degree rape was imprisonment at hard labor for not less than 5 years nor more than 40 years. At least 2 years of the sentence must be served without benefit of parole, probation or suspension of sentence. La. R.S. 14:42.1(B).

Prior to imposing sentence in this case, the trial court reviewed the presentence investigation (PSI) report, which provided information about defendant's personal background, including his education and work history. The trial court stated it had also reviewed a number of letters submitted on defendant's behalf.

The trial court noted the defendant's status as a first-felony offender was a mitigating factor. However, the trial court pointed out the PSI report showed defendant's history of violent behavior based on a number of prior criminal charges, including battery, aggravated assault, prowling, battery of a police officer, and simple kidnapping. The report also listed a 2011 DWI conviction.

The trial court stated it had considered the sentencing factors of Article 894.1 and found a lesser sentence would deprecate the seriousness of the offense committed. Further, the trial court noted although defendant was a first-felony offender, he had been convicted of second degree rape, which is a very serious charge requiring a significant sentence.

The record shows the trial court adequately considered the criteria set forth in Article 894.1 and the circumstances of defendant's background, such as his age, education, employment, criminal record and the seriousness of the offense. We note the 18-year sentence imposed is less than one-half

9

of the statutory maximum sentence.  In addition, defendant benefitted from the trial court's imposition of the statutory minimum time to be served without benefit of parole, probation or suspension of sentence. The sentence imposed is proportionate to the nature of the offense committed and does not ostensibly shock the sense of justice.  Based upon this record, we cannot say the trial court abused its discretion in imposing this mid-range sentence, which appropriately reflects the severity of defendant's crime.  Thus, the assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**