WILLIAMS, J.
hA Caddo Parish Grand Jury returned an indictment charging the defendant, Markeece T. Mosley, with second degree murder, a violation of LSA-R.S. 14:30.1. Following a jury trial, he was found guilty as charged. The trial court sentenced the defendant to the mandatory term of life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence. For the following reasons, we affirm.
FACTS
The defendant, Markeece T. Mosley, was a 17-year-old employee of Shreveport Green, a nonprofit organization through which youths and young adults were provided with jobs, paid for their work, and given money to use for further education upon completion of the program. The victim, Yvonne Lee, was the assistant director of Shreveport Green. The defendant did not have a vehicle; therefore, Mrs. Lee frequently drove him home after work.
On January 21, 2010, money and an iPhone were stolen from the purse of Donna Curtis, the executive director of Shreveport Green. Ms. Curtis called Cad-do Parish Sheriffs deputy, Mike Middleton, who met with three youths, including the defendant, who were present that day. Sgt. Middleton Mirandized the youths and questioned them together and separately about the missing property. He informed the youths that “things would go better” if the items were recovered quickly. The defendant “found” the iPhone almost immediately; however, the money was never recovered. Thereafter, Mrs. Lee met with the youths and informed them that if the money was not returned, they would be required to take a polygraph latest. She also told them that even if the money was returned, the person who took it would be dismissed from the program.
On February 3, 2010, Mrs. Lee drove the defendant home from work. In addition to giving the defendant a ride, Mrs. Lee was going to obtain consent from the defendant’s mother to administer a polygraph test. Surveillance cameras at Shreveport Green showed Mrs. Lee and the defendant getting into her car. The videotape showed that the defendant was wearing a white jacket with a bold design on the back.
Less than 20 minutes later, Johnny Hanson was driving on Wyngate Boulevard when he saw Mrs. Lee’s car parked on the wrong side of road. Hanson saw that the driver’s side door was open, the motor was running, and the headlights were on. Hanson went to investigate and asked Mrs. Lee if she needed help, but she did not respond. He flagged down other motorists and used a cell phone to call 9-1-1. Hanson walked toward the back of Mrs. Lee’s vehicle and saw a black purse on the ground; the contents of the purse were scattered.
Maren Strickland and her husband were also driving down Wyngate Boulevard when they were flagged down by someone who told them that a woman had been shot. Because Mrs. Lee’s vehicle had *1168 stopped in the northbound lane, facing south, Mr. Strickland parked his car in front of her vehicle, front-to-front, to protect it from oncoming traffic. Mrs. Strickland, a certified nursing assistant, attempted to render aid to Mrs. Lee, but there were no signs of life. She observed blood and noticed that the door was open and the window had been broken.
|sShreveport Police Corporal Greg Ru-dell was one of the responders to the 9-1-1 call. Cpl. Rudell testified as follows: he arrived on the scene and discovered Mrs. Lee “slumped over” in the driver’s seat, leaning toward the passenger side of the vehicle; the window on the driver’s side of the vehicle had been shattered; two expended shell casings were on the passenger side floorboard; blood was on the steering wheel; a pool of blood was on the driver’s side floorboard; droplets of blood were on the backseat; the blood pattern indicated that the victim had been moved from a “leaning forward” position on the steering wheel to an upright position; the victim was slumped to the right, so blood on the passenger’s side of the vehicle ran down the center console; the majority of the glass from the window was located inside of the vehicle; the victim’s purse and all of its contents were “dumped” outside the vehicle.
Dr. Christopher Wolcott, the Medical Director for the Shreveport Fire Department, also responded to the call. Dr. Wol-cott examined Mrs. Lee at the scene and discovered two bullet wounds on the right side of her face-one on her cheek and another in front of her ear. Mrs. Lee was pronounced dead at the scene. Subsequently, it was determined that Mrs. Lee died as a result of a gunshot wound to the head.
While processing the scene, police officers learned that the defendant was a possible suspect. They also discovered that the defendant lived in an apartment within 100 yards of the location of Mrs. Lee’s vehicle. Cpl. Rudell, along with other officers, went to the defendant’s apartment. When the officers arrived, the defendant, who was home with his mother, came out 14 of the back of the apartment wearing only boxer shorts. The officers obtained a warrant to conduct a search of the residence. During a search of the defendant’s bedroom, officers located a black backpack in the closet; the backpack contained a semiautomatic pistol. The officers also found $76 in cash under a pillow on the defendant’s bed; one of the bills appeared to have blood on it. Subsequently, the officers searched a dumpster outside the apartments. There, they discovered the defendant’s blood-soaked white jacket and some cotton gloves.
The defendant was transported to the police station. He waived his rights and submitted to an audiotaped interview and DNA testing. During the interview, the defendant made the following statements: he entered Mrs. Lee’s vehicle with a gun in the waistband of his pants; Mrs. Lee saw the gun when it came out of his waistband; Mrs. Lee “grabbed” the gun; he heard the gun “go off’ one time; he ran after the gun “went off’; he ran home and took a shower; he placed his bloody clothing in the dumpster at his apartment complex. The defendant denied intending to kill Mrs. Lee; he also denied taking her purse or anything else from the vehicle.
On March 17, 2010, a Caddo Parish grand jury returned an indictment, charging the defendant with second degree murder, “in that he killed Yvonne Lee when he had the specific intent to kill and inflict great bodily harm[.]” On February 8, 2011, the indictment was amended to state that the defendant possessed the specific intent to kill Mrs. Lee and that he killed her “while he was engaged in the perpe *1169 tration [or] attempted perpetration of armed robbery of [Mrs.] Lee[.]”
|-A trial ensued, after which the jury found the defendant guilty of second degree murder. Following the verdict, the jury was polled, and the vote was 11-1 to convict the defendant as charged.[1] The defendant filed a “motion for post-verdict judgment of modification,” requesting that a lesser verdict be entered. The trial court denied the motion and sentenced the defendant to the mandatory term of life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence.
The defendant appeals his conviction and sentence.
DISCUSSION
The defendant contends the evidence adduced at trial was insufficient to support a conviction of second degree murder. He argues that the state did not meet its burden of proving that he had the specific intent to kill Mrs. Lee or that he killed Mrs. Lee during the commission of a robbery. The defendant maintains that the state relied upon circumstantial evidence to convict him of second degree murder; therefore, the state was required to “exclude every reasonable hypothesis of innocence,” pursuant to LSA-R.S. 15:438.
A claim regarding sufficiency of evidence is properly raised by a motion for post verdict judgment of acquittal. However, if the defendant fails to make such motion, the issue will be reviewed on appeal when raised by a formal assignment of error. LSA-C.Cr.P. art. 821 and art. 920; State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190. In reviewing the sufficiency of | fithe evidence to support a . conviction,, the reviewing court must determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes charged were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for 7a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La. *1170 App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the conviction is based on circumstantial evidence, such evidence must exclude any reasonable hypothesis of innocence. LSA-R.S. 15:438. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
When a jury reasonably and rationally rejects the exculpatory hypothesis of innocence offered by a defendant’s own testimony, an appellate court’s task in reviewing the sufficiency of the evidence under the | sDue Process Clause is at an end unless an alternative hypothesis “is sufficiently reasonable that a rational juror could not ‘have found proof of guilt beyond a reasonable doubt.’ ” State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, citing Captville, supra, and Jackson v. Virginia, supra. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. State v. Rosiere, 488 So.2d 965 (La.1986).
In the instant case, the defendant was convicted of second degree murder, in violation of LSA-R.S. 14:30.1. That statute provides, in pertinent part:
A. Second degree murder is the killing of a human being:"
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ..., even though he has no intent to kill or to inflict great bodily harm.
[[Image here]]
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. Hill, supra.
Armed robbery is the taking of anything of value belonging to |flanother from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64(A).
In the instant case, the defendant argues that the state failed to prove that he had “a specific intent to kill or to inflict great bodily harm” upon the person of *1171 Mrs. Lee. He maintains that the gun discharged when Mrs. Lee attempted to grab or “swat at” it; therefore, the shooting was accidental. The defendant also argues that he did not kill Mrs. Lee during the commission of an armed robbery. According to the defendant, he did not remove Mrs. Lee’s purse from the vehicle. He argues that after he fled the scene, an unidentified third party “must have” happened upon Mrs. Lee’s lifeless body and removed her purse from the vehicle.
The defendant’s trial included the presentation of physical evidence, as well as the testimony of many witnesses. Dr. Long Jin, a forensic pathologist at LSU Health Sciences Center, performed the autopsy on Mrs. Lee. Dr. Jin testified as follows: Mrs. Lee sustained two gunshot wounds; the fatal shot was fired into an area slightly in front of Mrs. Lee’s right ear and exited the left side of her neck, below her left ear; the bullet fractured her cervical spine at C — 1; the barrel of the gun was approximately 20-24 inches from Mrs. Lee’s face when the gun was fired. Dr. Jin also testified that Mrs. Lee was facing the front of the vehicle when the shots were fired.
Mark Rogers, an independent consultant in the field of criminal justice, testified regarding the bloodstains found inside Mrs. Lee’s vehicle. Rogers testified as follows: the blood on the passenger seat was, more 110probable than not, transferred from an object that had wet blood on it, rather than being actively deposited on the seat and having an object smear; the blood smear was consistent with a jacket that had wet blood on it; the bloodstains found on the inside of the door on the driver’s side were not consistent with the injuries sustained to Mrs. Lee’s left side; the bloodstains were created by a wet bloody object coming into contact with the interior of the door, leaving a transfer of wet blood on the door. Rogers stated, “Someone opened the driver’s door and reached in and had blood on them that came in contact with the driver’s door.” Rogers testified that the bloodstains were consistent with the defendant’s jacket, which had blood covering the left side. Rogers also testified that because a bullet from the defendant’s gun was found at a residence on Wyngate Boulevard, in his opinion, Mrs. Lee was shot at that location, north of where her vehicle was discovered, and the vehicle continued to move until it came to rest against the curb.[2]
*1172 | nAdditionaIly, Rogers also testified as follows regarding the vehicle’s broken driver’s side window: when a projectile is fired through a window, it “spider webs” the glass and causes the glass to break, not just where the bullet strikes, but through the entire sheet of safety glass; the glass remains in place until “something” knocks it out; a small area, where the bullet passes through, will be taken with the bullet, but the majority of the glass will stay in the window until someone opens the door; when the door is opened, the majority of the glass will fall inside, more than outside, the vehicle. Rogers testified that the evidence led him to believe that the shots were fired inside the vehicle, and the bullets exited the vehicle through the driver’s side window. He opined, with the “highest probability,” that the shooter was located in the passenger’s seat of the vehicle when the shots were fired.
Douglas Brent Lee, Mrs. Lee’s husband, also testified. He stated that Mrs. Lee kept “everything” in her purse, including her wallet, credit cards, money and notes. Mr. Lee also testified that on the day of her death, Mrs. Lee had gone to the bank and cashed several checks, one of which was in the amount of $200.
As stated above, the defendant’s audio-taped statement was played for the jury. In the statement, the defendant made the following assertions: he carried the gun to work every day “for protection”; on the day of the shooting, the gun was in the waistband of his pants; during the ride home, |12the gun came out of his waistband; Mrs. Lee saw the gun. When asked if Mrs. Lee tried to push the gun away, the defendant replied, “No ... when I pulled it out, she was trying to see what I had it for and all that. And she grabbed it. I didn’t even know I shot her two times, to be honest.” The defendant also stated that he did not know how the gun discharged. He stated that he heard the gun go off one time, and then he ran. When asked why did he pull the gun from his waistband, the defendant repeatedly replied, “I don’t know.” The defendant denied having the intent to kill Mrs. Lee. He also denied taking the defendant’s purse from the vehicle. The defendant stated that after he heard the gunshot, he ran home, removed his bloody clothes and shoes, and placed them in the dumpster.
After reviewing this record in its entirety, we find that the evidence was sufficient to support the defendant’s conviction. The defendant entered Mrs. Lee’s vehicle while armed with a weapon. The surveillance video at Shreveport Green showed the defendant getting into the victim’s car wearing a white jacket with a bold design on the back that was clearly visible on the video. The video also showed Mrs. Lee placing her purse on the floor on the driver’s side of the vehicle. Minutes later, Mrs. Lee’s vehicle was found within 100 yards of the defendant’s apartment with the victim, who was shot in the head, in the driver’s seat with the vehicle’s engine still running.[3] Contrary *1173 to the defendant’s statement that the gun | ^discharged when the victim attempted to grab or “swat at” it, an expert witness testified that Mrs. Lee was facing the front of the car when she was shot. The evidence also established that after the shooting, the defendant, whose jacket was bloody, opened the driver’s side door, and removed Mrs. Lee’s purse. The purse was found behind the vehicle, with its contents scattered.
The defendant admitted in his statement to the police that his gun fired inside the victim’s car. When asked why he pulled the gun out of the waistband of his pants, the defendant responded, “I don’t know.” After shooting Mrs. Lee, the defendant attempted to hide his crime by disposing, of the clothing he was wearing at the time of the shooting. Despite his contention that the shooting was accidental, the defendant made no attempt to summon help for Mrs. Lee after he shot her.
Based on the foregoing evidence, the jury reasonably rejected the hypothesis of innocence presented by the defendant’s statement that the shooting was an accident; it was reasonable for the jury to conclude that the defendant had the specific intent to kill or to inflict great bodily harm upon Mrs. Lee. The evidence was sufficient to meet the Jackson standard; therefore, this assignment of error is without merit.
The defendant also challenges the constitutionality of LSA-C.Cr.P. art. 782, which provides that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of 12 jurors, 10 |14of whom must concur to render a verdict. The defendant argues that non-unanimous verdicts cannot survive constitutional review, in the bright light of recent decisions by the United States Supreme Court, which reexamine the history and application of the Sixth and Fourteenth Amendments’ guarantee of the right to trial by jury.[4] The defendant also points out that Louisiana and Oregon are the only states that allow 10 out of 12 jurors to convict or acquit in criminal cases, except for guilty verdicts in first degree murder eases.
LSA-C.Cr.P. art. 782 provides for the number of jurors composing a jury, and the number which must concur in rendering the verdict. That article states, in pertinent part:
A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict[.]
[[Image here]]
Second degree murder is an offense for which “punishment is necessarily confinement at hard labor.” See, LSA-R.S. 14:30.1.
This Court and the Louisiana Supreme Court have consistently upheld the constitutionality of LSA-C.Cr.P. art. 782(A). See, State v. Jones, 381 So.2d 416 (La.1980); State v. Edwards, 420 So.2d 663 (La.1982); State v. Simmons, 414 So.2d 705 (La.1982); State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738; State v. Divers, 38,524 (La.App.2d Cir.11/23/04),15 *1174 889 So.2d 335, writ denied, 2004-3186 (La.4/8/05), 899 So.2d 2, cert. denied, 546 U.S. 939, 126 S.Ct. 431, 163 L.Ed.2d 327 (2005); State v. Malone, 43,548 (La.App.2d Cir.11/19/08), 998 So.2d 322, writ denied, 2009-0198 (La.10/30/09), 21 So.3d 275; State v. Winslow, 45,414 (La.App.2d Cir.12/15/10), 55 So.3d 910, writ denied, 2011-0192 (La.6/17/11), 63 So.3d 1033; State v. Johnson, 45,828 (La.App.2d Cir.1/26/11), 57 So.3d 1087.
In Bertrand, supra, the trial court declared LSA-C.Cr.P. art. 782 unconstitutional, and the ruling was appealed directly to the Louisiana Supreme Court. The supreme court reversed the trial court’s ruling, stating:
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
Id. at 743. See also, Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).
In the instant case, we find that the defendant’s conviction for second degree murder by a vote of eleven to one was permissible under our federal and state constitutions. This assignment of error lacks merit.
The defendant also contends the sentence imposed, life imprisonment at hard labor without benefit of probation, parole or suspension of sentence, violates Article I, § 20, of the Louisiana Constitution. The defendant argues | ]6that the sentence is excessive in that it is nothing more than a purposeless and needless imposition of pain and suffering. The defendant also argues that the sentence excessively punishes him for a “rash act,” which should be punished in a manner that allows him some hope of rehabilitation and re-entry into society.
When a defendant fails to timely file a motion to reconsider sentence under LSA-C.Cr.P. art. 881.1, the appellate court’s review is limited to the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Richie, 44,783 (La.App.2d Cir.10/28/09), 25 So.3d 879, writ denied, 2009-2492 (La.4/30/10), 34 So.3d 280.
A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 1999-1753, 1999-1528 (La.5/16/00), 769 So.2d 1158. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7.
LSA-R.S. 14:30.1(B) provides:
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor l17without *1175 benefit of parole, probation, or suspension of sentence.
Where there is a mandatory sentence, there is no need for the trial court to justify, under LSA-C.Cr.P. art. 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35; State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. Mandatory sentences under LSA-R.S. 14:30.1 have been consistently upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment. See, State v. Woods, 44,491 (La.App.2d Cir.8/19/09), 16 So.3d 1279; State v. Scott, 2009-2084 (La.4/9/10), 31 So.3d 380; State v. Wright, 42,956 (La.App.2d Cir.3/5/08), 978 So.2d 1062, writ denied, 2008-819 (La.10/31/08), 994 So.2d 532.
A court may depart from a mandatory minimum sentence only if it finds that the defendant presented “clear and convincing evidence” to rebut the presumption of constitutionality, which requires a showing that she is exceptional, ie., “because of unusual circumstances, this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the ease.” State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, quoting State v. Young, 94-1636 (La.App.4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring).
In the instant case, although not required to do so, the trial court 11sconsidered the guidelines set forth in Article 894.1, prior to imposing the mandatory life sentence. The court found that every criterion set forth in Section A of that article applied in this case. The court stated that if the mandatory sentence was not imposed, there was a high risk that the defendant would commit another crime and that a lesser sentence would deprecate the seriousness of the offense.
We agree. The gravity of the instant offense and the culpability of the defendant warrant no downward departure from the legislatively mandated life sentence. The defendant shot an unarmed Mrs. Lee twice in the head as she gave him a ride home from work. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s conviction and sentence.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.

. The jury verdict form contained the following "possible verdicts”: second degree murder; manslaughter; negligent homicide; and not guilty.

. Elsie Moore, who lived at 7901 Wyngate Boulevard, testified that she was out shopping on the night of the shooting and got a call to return home. When she arrived at home, she found glass in the middle of the street directly in front of her house. A few days later, she realized the window to one of her bedrooms had been broken, and when she pulled a bed away from the window, she found a bullet hole in the headboard of the bed in front of the window. She called the Shreveport Police Department, and officers came to investigate.
Detective Lowell Bowen, a Shreveport Police Department Violent Crimes Investigator, testified that approximately one week after Mrs. Lee was killed, he was called to Moore’s home to investigate. He and another officer traced the bullet through the window, into the headboard, and recovered a lead projectile inside the headboard of the bed. The bullet was sent to be processed at the crime lab. It was later determined that the bullet was fired from the gun recovered from the defendant's apartment.
Corporal Tracey Mendels, a Shreveport Police Department Crime Scene Investigator, testified regarding a diagram that she had prepared depicting the 7900 and 8000 blocks of Wyngate Boulevard. She testified that a bullet hole entered the house at 7901 Wyngate Boulevard, and glass was in the area in front of that home. The glass was scattered and was found at 7905, 7909, and 7913 Wyngate, and appeared to be glass from a window. These houses were located on the east side of Wyngate, or to the left of the direction in which Ms. Lee's car was heading. Cpl. Men- *1172 dels testified that the diagram shows a distance measurement of 516 feet, two inches from the bullet hole in the house to the point where the victim’s car was found.

. None of the witnesses testified as to the exact time they arrived on the scene; all testimony of responding law enforcement officers and the fire department indicates those people arrived within five to ten minutes from when they received the call, but none give the time. An "Incident/Investigation Report” found at page 35 of the record, filed by L.T. Bowen, states that on Feb. 3, 2010, at approximately 6:35 p.m., he was contacted by Detective Holmes in reference to a shooting in the area of 8000 Wyngate, and that he arrived at 6:50 p.m. on the scene. Therefore, less than 20 minutes elapsed between the time the victim and defendant left Shreveport Green and *1173 the time the victim’s car was found on Wyn-gate.

. The defendant points out that in Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), the United States Supreme Court rejected Louisiana's former practice of permitting non-unanimous verdicts in six-member juries, holding that five out of six jurors could not return a constitutional verdict.