Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,709-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LARRY JAMES RAINEY                          Appellant

* * * * *

Appealed from the
Thirty-Ninth Judicial District Court for the
Parish of Red River, Louisiana
Trial Court No. C220227

Honorable Luke D. Mitchell, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JULIE C. JONES                          Counsel for Appellee
District Attorney

R. BENNETT LANGFORD, III
Assistant District Attorney

* * * * *

Before PITMAN, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

Larry Rainey, who struck his girlfriend's 16-year-old daughter with a metal pipe, appeals his conviction of domestic abuse battery in violation of La. R.S. 14:35.3(P). We affirm his conviction and sentence.

## FACTS

On August 5, 2022, Rainey, his girlfriend, Felicia Henderson, and her daughter, KD, were attending a party at a home in Coushatta in Red River Parish. When Rainey tried to leave the party in Henderson's vehicle after she had told him that he could not drive it to get cigarettes, he backed into a utility pole and caused damage to the vehicle. KD and other partygoers began yelling at Rainey for what he had done. Rainey struck KD and Henderson with a metal pipe. KD, who was hit once in the face, required medical attention for a broken jaw.

Rainey was charged by an amended bill of information with (1) one count of domestic abuse battery on KD by the intentional use of force or violence with a dangerous weapon and by intentionally inflicting serious bodily injury in violation of La. R.S. 14:35.3(P) by one household member upon another, (2) one count of unauthorized use of a motor vehicle belonging to Henderson in violation of La. R.S. 14:68.4, and (3) one count of domestic abuse battery by the intentional use of force or violence with a dangerous weapon upon Henderson in violation of La. R.S. 14:35.3(O) by one household member upon another.

*Trial*

A jury trial began on May 3, 2023. Sergent Kenton Lacaze with the Coushatta Police Department testified that he responded to a call on August 5, 2022, concerning a vehicle crash. When he arrived at the scene, he saw a

large group of people in the yard around Rainey. He observed Rainey swinging a metal pipe that was two to three feet long.

Sgt. Lacaze heard what sounded like the pipe hitting something two to three times. Rainey then ran toward him. Sgt. Lacaze found Rainey to be cooperative, but he recalled that Rainey cursed at him. After Rainey was detained, Henderson ran toward Rainey to attack him and screamed that he had hit her child. Sgt. Lacaze used pepper spray to subdue Henderson.

Sgt. Lacaze recalled that Henderson told him that KD had "run up" to Rainey at some point. KD, who said she was hurting badly, was transported to the hospital.

Officer John Lacaze, Jr., who was also with the Coushatta Police Department, testified that when he arrived on the scene, he saw Rainey in the yard with a large group of people. Rainey was holding a metal pipe in his hand. Officer Lacaze seized the pipe from Rainey and detained him. Rainey did not give him any trouble. It was not long after Officer Lacaze seized the pipe that Henderson ran toward them and tried to take the pipe.

Officer Lacaze testified that KD was transported to the hospital for treatment. She was bleeding from the corner of her mouth and was crying from pain.

Felicia Henderson testified that at the time of the incident, she lived with Rainey, who was her boyfriend, and KD, who was her daughter. She and Rainey arrived at the party in separate vehicles, with Rainey driving her 2004 Ford Expedition. When she heard Rainey say that he was leaving to get cigarettes, she told him not to take her vehicle and argued with him about not going to the store beforehand. She did not want him to leave in her

Expedition because she thought he was drunk. Henderson testified that everyone at the party had been drinking.

Henderson acknowledged that she became angry with Rainey after he hit the pole. She denied telling officers that KD had "run up" on Rainey because she did not witness what occurred. When she heard that KD was on the ground, she went outside. She saw that KD was unconscious and ran to where she was to find out what had happened. Rainey then struck her on the head and arm. She fell, but then she got up and went after Rainey because he had hit KD. According to Henderson, KD had two plates inserted in her jaw.

Henderson agreed that KD and Rainey did not get along very well. If they were arguing, KD would get up in Rainey's face. Henderson also agreed there was a large group of people outside after Rainey hit the pole.

Andrika Demery hosted the party where the incident took place. She heard Henderson tell Rainey not to take her vehicle to get cigarettes. Henderson told him to drive her vehicle home instead and then she would get him. Demery witnessed Rainey hit the pole. She was angry with him because she was worried it would cause an issue with her landlord and she would have to pay for the damages. She recalled that there were several people outside yelling at Rainey after the accident.

Demery testified that KD walked to the truck and told Rainey to get out of it. They argued after Rainey left the truck, and then KD jumped at him. When KD flexed at Rainey, he hit her once in the face with the pipe and she fell. Demery went to check on KD, who was on the ground crying. Meanwhile, Henderson was away from the vehicle as Demery's brother tried to calm her. When Henderson learned that KD had been hit, she ran toward

3

Rainey and confronted him.  Henderson and Rainey then began arguing.  She heard Henderson say that Rainey hit her, but she did not see that occur as she was focused on KD.  An ambulance transported KD to the hospital.

KD testified that she was 16 years old on August 5, 2022.  She and her mother lived with Rainey.  Henderson told Rainey to drive the vehicle home and then she would get him.  Rainey asked her mother if he could drive her vehicle to go to the store, but she said no.  After Rainey hit the pole, KD got into it with him and told him to give her the keys.  She did not recall if she got up in his face.  Rainey then came at her with the pipe and knocked her out.  She was unconscious for a few seconds, then felt extreme pain.  Her left mandible was broken, which required the insertion of screws and two plates.  It took almost eight weeks for her injury to heal.

KD acknowledged that she and Rainey did not always get along.  They would get into arguments, and she would also support her mother when the couple argued.  On one occasion, she hit Rainey with an ashtray.  She also acknowledged that there were a lot of people at Demery's home for the party and that everyone had been drinking.  She recalled that Demery and her husband were mad at Rainey because they were concerned the damage to the pole would cause problems with their landlord.

After the prosecution rested, Rainey testified on his own behalf.  He stated that as soon as he got out of the truck after hitting the pole, Henderson began yelling at him about the damage.  KD joined the argument and began telling her mother what to do about the situation.  Rainey recalled that multiple people were around him, and they started telling him that they were going to kick his ass.  Those people, which included adult men, were related to Henderson and were trying to get to him.  He became concerned for his

4

safety, so he grabbed the pipe and told them that he would hit them if they came at him. He started swinging the pipe as they steadily came upon him, but he did not realize that he had struck someone.

Describing what happened on August 5, Rainey testified, "So, next thing I know she done ran all the way up on me. So, bam, boom, I done hit her and her momma." Nevertheless, Rainey insisted that he did not try to intentionally break KD's jaw and really did not even try to hit her. He added that he felt the need to defend himself because everyone was angry with him and he had people coming upon him. He believed that defending himself with a pipe was reasonable because he was concerned for his safety from the crowd of angry people around him.

Rainey claimed that he did not know it was Henderson when he swung the pipe at her because it was nighttime. He also claimed that he did not know it was KD that he had hit until he made contact. He just saw someone coming at him and then he swung the pipe. He did not hit anyone else in the crowd.

Rainey testified that he and KD had had issues before August 5, and she had hit him on a prior occasion with a candle holder, which caused stitches and a scar. However, he agreed that he did not need a metal pipe to defend himself from a 16-year-old girl.

The jury rendered a verdict finding Rainey guilty of domestic abuse battery with a dangerous weapon with serious bodily injury. He was found not guilty of the other two charges. Although defense counsel declined the opportunity to have the jury polled, the jury foreperson responded in the affirmative when the trial court asked him if everyone agreed with the verdict.

5

On July 31, 2023, Rainey's trial counsel filed motions for a new trial and for a post verdict judgment of acquittal. Both motions were denied.

Rainey was sentenced to 11 years at hard labor. A motion to reconsider sentence was denied.

## DISCUSSION

Rainey argues on appeal that his conviction must be reversed because he established by a preponderance of the evidence that he acted in self-defense. He argues in the alternative that the evidence was insufficient to support his conviction beyond a reasonable doubt because the evidence failed to show that he specifically intended to cause serious bodily injury to KD.

### Self-defense

Rainey maintains that his claim of self-defense was established through Sgt. Lacaze's testimony that: (1) Rainey was surrounded while swinging the pipe, (2) Rainey ran toward him and surrendered the pipe, and (3) he used pepper spray to prevent Henderson from attacking Rainey.

The burden of proving self-defense in a nonhomicide case rests with the defendant to prove the defense by a preponderance of the evidence. *State v. Barron*, 51,491 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1178, *writ denied*, 17-1529 (La. 6/1/18), 243 So. 3d 1063. The use of force or violence upon the person of another is justifiable in a nonhomicide case "[w]hen committed for the purpose of preventing a forcible offense against the person . . . provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A)(1)(a).

In a nonhomicide situation, a claim of self-defense is subject to a two-part inquiry. *State v. Barron*, *supra*; *State v. Lynn*, 55,210 (La. App. 2 Cir.

6

2/28/24), 380 So. 3d 812. First, there is an objective inquiry into whether the force used was reasonable under the circumstances. *Id*. Second, there is a subjective inquiry into whether the force used was apparently necessary. *Id*.

Rainey contends that the undisputed evidence showed that he was surrounded by a crowd of angry people, including adults and teenagers who had been drinking alcoholic beverages all day, and that he swung the pipe around after warning the mob that he would defend himself. Rainey maintains that his limited use of force was followed by a retreat to police officers and the surrender of the pipe to them.

We disagree with Rainey's assessment of the evidence. There is no doubt that the partygoers were angry after Rainey wrecked Henderson's vehicle. However, Rainey decided to arm himself with a pipe of significant heft and length against what was apparently an unarmed crowd, and the two people who were struck just happened to be his girlfriend and her daughter. Moreover, the jury could have viewed Rainey running to the police as him escaping a crowd that was no longer angry just about the accident, but also angry about Rainey having struck a teen-aged girl with a metal pipe. In addition, the jury could have considered Henderson's conduct that led to her being pepper sprayed as no longer just her reaction to the damage to her car but as a mother's reaction upon learning what had happened to her daughter.

The force used was not reasonable under the circumstances, nor was it apparently necessary. The jury correctly rejected Rainey's claim of self-defense.

7

*Sufficiency of the evidence*

Rainey argues the state failed to prove beyond a reasonable doubt that he specifically intended to cause serious bodily injury to KD. He maintains there was no evidence that he intentionally struck KD, that he intended to cause serious physical injury to her, or that he intended to hit her on the head or on any specific part of her body.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court accords great deference to a jury's decision to accept or reject the testimony

8

of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Alexander*, 51,918 (La. App. 2 Cir. 4/11/18), 247 So. 3d 981, *writ denied*, 18-0805 (La. 2/11/19), 263 So. 3d 436. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *State v. Lilly*, *supra*; *State v. Alexander*, *supra*. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Lilly*, *supra*; *State v. Green*, *supra*. Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. *State v. Mosley*, 46,756 (La. App. 2 Cir. 12/16/11), 80 So. 3d 1164, *writ denied*, 12-0117 (La. 5/4/12), 88 So. 3d 462.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753.

Domestic abuse battery is the intentional use of force or violence committed by one household member or family member upon the person of

another household member or family member. La. R.S. 14:35.3(A). Rainey was convicted under Subparagraph (P), which states:

> Notwithstanding any provision of law to the contrary, if the intentional use of force or violence is committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury, the offender, in addition to other penalties imposed pursuant to this Section, shall be imprisoned at hard labor for not more than fifteen years.

La. R.S. 14:35.3(P).

Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Walker*, 53,975 (La. App. 2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 21-01334 (La. 11/23/21), 328 So. 3d 83. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of *Jackson v. Virginia*. *Id*.

Appellate counsel contends that the state was required to prove that Rainey specifically intended to cause serious bodily injury. In support of this position, counsel refers to the crime of second degree battery, which, like La. R.S. 14:35.3(P), has the same element of "intentionally inflicts serious bodily injury."[1]

Second degree battery is a specific intent crime; therefore, the evidence must show that the defendant intended to inflict serious bodily injury. *State v. Fuller*, 414 So. 2d 306 (La. 1982); *State v. Walker*, *supra*.

_____

[1] Second degree battery is defined as "a battery when the offender intentionally inflicts serious bodily injury[.]" La. R.S. 14:34.1(A).

10

We note that under the doctrine of transferred intent, a defendant can be convicted for the unintentional injury of one person if he specifically intended to injure someone else. *See State v. Creel*, 2014-0680 (La. App. 1 Cir. 12/23/14), 2014 WL 7332121.

While Rainey claimed that he only swung the pipe in order to keep those threatening him at bay, the only two people struck happened to be his girlfriend and her daughter, KD, who suffered a serious injury to her jaw from the blow. Rainey struck no one else who was supposedly threatening him. The evidence was sufficient to establish beyond a reasonable doubt that when Rainey swung the pipe, he had the specific intent to inflict serious bodily injury.

Rainey further argues that the trial court did not instruct the jury that the state had to prove beyond a reasonable doubt that he acted with the specific intent to inflict serious bodily injury on KD. We disagree.

First, the trial court's instructions to the jury were sufficient. The trial court told the jurors that to convict Rainey of the charged offense, they must find that Rainey "had a *specific intent* to commit domestic abuse battery with a dangerous weapon inflicting serious bodily injury." (Emphasis added.)

Second, nothing in the record indicates that trial counsel objected to the jury instructions. Regarding the contemporaneous objection rule and jury instructions, this court has stated:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C. Cr. P. art. 801(C). However, jury instructions may be reviewed on appeal even without a contemporaneous objection when the alleged error violates a fundamental right. *State v. Roth*, 52,359 (La.

App. 2 Cir. 11/14/18), 260 So. 3d 1230. To fall under the exception, the error must cast substantial doubt on the reliability of the fact-finding process. *State v. Matthews*, 50,838 (La. App. 2 Cir. 8/10/16), 200 So. 3d 895, *writ denied*, 16-1678 (La. 6/5/17), 220 So. 3d 752. An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction. *State v. Matthews*, *supra*.

*State v. Kelly*, 52,731, p. 6 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, 861, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071. We discern no error in the jury instructions, and if there were one, it was harmless.

## CONCLUSION

Rainey's conviction and sentence are AFFIRMED.