STEWART, J.
|,The defendant, Demarcus Clark, was convicted of armed robbery, in violation of La. R.S. 14:64. He was sentenced to serve 60 years’ imprisonment, without benefit of probation, parole, or suspension of sentence. He was also ordered to pay restitution and court costs. The defendant now appeals. Based on the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On July 1, 2008, three masked and gloved persons, armed with an AK-47 and semi-automatic handguns, entered into the Ace in the Hole casino at the Relay Station in Caddo Parish. While two of the armed persons held Justin Dodson, an unarmed security guard, and Gloria Henderson, an employee of the casino, at gun point, the third person stole $21,619.00. Dodson and Henderson were left bound and gagged while the three armed individuals left with their driver in a stolen 1989 gray Pontiac Bonneville.
On October 8, 2008, the defendant was charged by bill of information with armed robbery and possession of stolen things. His charges were later amended to include only the armed robbery offense.
In a supplemental response to the defendant’s motion for discovery, which was filed on September 10, 2010, the state informed him that it intended to offer the crime lab’s Deoxyribonucleic Acid (hereafter referred to as “DNA”) analysis report into evidence as proof by certificate pursuant to La. R.S. 15:499, et seq. The state attached a copy of a certified lab report dated September 1, 2010, and marked as “Analyzed By: Audra Williams.”
li>The jury trial began on May 2, 2011. Testimony and evidence presented at trial revealed the following.
The defendant, a former Marine, had been a security guard at the casino. After the July 1, 2008, robbery, he never returned to his job. Just days before the robbery, he informed Crystle Todd, a bartender at the casino, that the unarmed guards at the casino would make the place easy to rob. The defendant also knew where the money was located in the casino: in the cash register, in a separate drawer underneath the liquor bottles, and in a small safe in the back room. He even knew that the majority of the money was not in the safe, but in a small, backroom cabinet called “the cage,” which could be accessed with the bartender’s keys.
In the early hours of July 1, 2008, Henderson and Dodson were the only two individuals present at the casino. Just after 3:00 a.m., a dark-colored Pontiac Bonneville, driven by Michael Smith, entered the parking lot and three men got out and entered the building. Smith remained in the car. The three men were completely covered from head to foot, their faces concealed by masks or bandanas and their hands covered in latex gloves. The first person, later identified as Clyde Jackson, Jr., wore a paintball mask and carried a silver handgun. The second person, later identified as Shacorey Bell, wore a paintball mask and carried an AK-47. The third person, later identified as the defendant, wore a red bandana over his face and carried a black handgun. When Henderson saw the masked and armed intruders, she dropped everything and attempted to hide. Her scream alerted Dodson, who turned to find Bell pointing the AK-47 at him. Bell held RDodson face down on the floor with the AK-47 pointed directly into his back. While pointing his silver handgun at her, Jackson asked Henderson about the keys, the cash drawers, and the back room. Henderson cooperated and informed Jackson of the cash *647 register and drawer, where she dropped the keys, and that the back room held the safe.
The casino surveillance video showed that the defendant entered the casino and immediately turned and locked the outside door. Gun in hand, he began sweeping the cash from the drawer and the cash register into a large white bag. He entered the back room and went immediately to the cage where most of the money was kept. After emptying the cage, he grabbed the small safe. He took the safe and the bag of money directly to the car outside. Jackson and Bell tied up Henderson and Dodson and taped their mouths. Dodson’s cell phone and wallet were taken. The entire robbery took about five minutes from the time the robbers arrived to the time they left. After Henderson believed that the robbers had left, she managed to untie herself and call 9-1-1.
The driver, Michael Smith, testified that he drove a half-mile down the road to where the defendant’s brown Mazda 626 was parked. The defendant instructed everyone to take off everything and leave it in the Bonneville. They moved the money and safe to the defendant’s car and drove to the defendant’s sister’s house, where the safe was left. The next day the four met at Jackson’s sister’s house, where the defendant brought the money and the AK-47. The money was split up, and Smith was paid $1,500 for his part as the driver.
|4Smith testified that he had known Bell and Jackson prior to the robbery. He believed that Jackson and the defendant knew each other prior to the robbery. Smith, Bell, Jackson, and the defendant met up prior to the robbery. Smith testified that the robbery was planned by the defendant. He related that the defendant had insisted that he would gather the money during the robbery, since he had worked at the casino. Smith said that on the way to the casino, the defendant made numerous phone calls.
Just hours after the robbery, deputies found the car abandoned a half-mile down the highway from the casino. The Pontiac Bonneville had been reported stolen on June 30, 2009. Fingerprints recovered from the car belonged to Bell, Smith, and another man, Antonio Butler. No fingerprints for the defendant and Jackson were found on or inside the car. Shoes, clothes, latex gloves, paintball masks, two red bandanas, and Justin Dodson’s cell phone were found in and around the car. DNA for the defendant, Bell, and Jackson was found in a paintball mask, and the defendant’s DNA was found on a portion of the latex glove. The guns and stolen money were never recovered.
The efficient nature of the robbery led detectives to believe the crime was an inside job, so detectives investigated current and former employees as suspects, including the defendant. Detectives believed that at least one perpetrator had military training based onhow the robbery was conducted.
The defendant initially agreed, then declined, to provide detectives with a DNA sample and fingerprints, and to take a polygraph test. The video recording of his interview with detectives showed that he phoned | ^someone he called “Mom” and instructed her to tell anyone who contacts her that her phone was turned off. The defendant is then seen wiping the rim of his water cup and the paperwork.
Officers obtained the defendant’s DNA and fingerprints under a search warrant and his cell phone records via a subpoena. The defendant told investigators that he was at his girlfriend’s house asleep during the time of the robbery. However, cell phone records indicate 13 calls made just prior to the robbery to his friend, Demetri *648 us Norman. The last call prior to the robbery was made .77 miles from the casino.
The defendant denied involvement in the crime and denied knowing the others involved. He admitted that he told some friends that the casino would be easy to rob. He also said that he gave out latex gloves, leftover from a former exterminator job, to his friends.
Audra Williams, a forensic DNA analyst with the North La. Crime Lab, was accepted without objection as an expert in DNA analysis. She testified that the most DNA is retrieved from items that are worn when perspiring, including the items at issue in this matter, a mask and gloves.
The analyst who conducted the actual tests on the evidence no longer worked for the lab and had moved out of state. Williams prepared the original certified DNA lab report and analysis using the results, notes, and pictures provided by the analyst who performed the test. The technical leader signed the original report, as required at the time. Williams signed both the original certified copy and the additional certified copy that was admitted into evidence at trial.
| (When the state moved to introduce the lab report, trial counsel objected to its admission on grounds that the report being submitted for admission was not the same as the report provided to trial counsel during discovery. The state explained that the original certified lab report had already been introduced into evidence at Bell’s trial, and a copy of this report was provided to trial counsel in discovery. The state asked the lab to provide another certified copy of the original report for admission into evidence at the defendant’s trial. That additional certified report states that it is a reprint of the original report issued on August 30, 2010. On comparison of the two versions of the report, trial counsel found no significant or relevant differences between the two versions of the lab report. The report was admitted without further objection.
Williams stated the glove portion was a fairly large piece, about five inches by about three or four inches, and appeared as if it tore when being removed. The piece was tested on each side, and the testing analyst was unable to determine which side was the inside or outside. The results for one side of the glove showed that a full DNA profile was obtained and was consistent with being a mixture from at least two persons, a major (predominant) and at least one minor. The results showed that the defendant’s DNA could not be excluded as the major contributor to the mixture. In fact, Williams said that the odds that the DNA on the glove came from someone other than the defendant was “1 in 192 trillion.” The content of the minor profile was too low to obtain a valid DNA profile.
|7The results for the opposite side of the glove were also a mixture of a major and at least one minor contributor. The results showed that the defendant’s DNA could not be excluded as the major contributor of the DNA profile, with a “1 in 50.9 trillion” probability that the DNA came from someone other than the defendant. The concentration of the minor contributor was too low to obtain a valid profile.
Williams testified that the DNA profile obtained from the foam cut from the nose area of the green paintball mask was a mixture of DNA from the defendant, as well as Shacorey Bell and Clyde Jackson, Jr. The results showed that those three persons could not be excluded as DNA donors to the profile.
Williams testified that it was her expert opinion that the DNA on the glove came *649 from the defendant. Regarding the foam cutting from the mask nose area, she said it was her expert opinion that the defendant could not be excluded as a DNA contributor.
On May 2, 2011, the jury found the defendant guilty as charged, of armed robbery. On May 31, 2011, the defendant filed a motion for new trial and a motion for acquittal. Following an evidentiary hearing regarding misconduct by a juror, the motion for new trial was denied on August 8, 2011.
On August 16, 2011, the defendant appeared for sentencing. The trial court noted that he had reviewed the record, the sentencing memoranda from the state and the defendant, and the sentencing guidelines in La. C. Cr. P. art. 894.1. The defendant was sentenced to serve 60 years’ imprisonment | Rat hard labor, without benefit of probation, parole, or suspension of sentence. He was also ordered to pay court costs and restitution to the casino owners for his pro rata share of the stolen $21,619.00.
On September 12, 2011, pro se motions for judgment of acquittal and/or modification of judgment and motion to reconsider sentence were filed. Both motions were denied. The defendant now appeals in counseled and pro se briefs.
LAW AND DISCUSSION

Insufficiency of Evidence

We will begin our review with the defendant’s pro se assignment 1A, a subsection within the defendant’s first assignment of error, in which he alleges that barring trial counsel’s ineffective assistance of counsel in his first assignment, the state had insufficient evidence to obtain a conviction against him. More specifically, he argues that had trial counsel objected to Audra Williams’ testimony, then the testimony and lab report would have been inadmissible. In the absence of the lab report and Williams’ testimony, the defendant contends that there would not have been sufficient evidence to convict him, beyond a reasonable doubt, of armed robbery.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a | reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App. 2 *650 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The' Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. 110When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Dorsey, 2010-0216 (La.9/7/11), 74 So.3d 603, cert. denied, - U.S. -, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). This is not a separate test that applies instead of a sufficiency evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
In cases where the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Dorsey, supra. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App. 2 Cir. 2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from the person or in the immediate control of another (4) by the use of force of intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Williams 45,755 (La.App. 2 Cir. 11/3/10), 54 So.3d 1129; State v. Jeselink, 35,189 (La.App. 2 Cir. 10/31/01), 799 So.2d 684.
The defendant argues that lab report certificate provided by the state was not in compliance with the statute because it was not signed by the testing analyst and the state did not have the testing analyst testify at trial to establish the validity of the report. However, the trial counsel failed to make a contemporaneous objection to the admission of the lab report, on those grounds, at trial. Pursuant to La. C. Cr. P. art. 841, the defendant may not avail himself of the error after the jury’s verdict was rendered. Furthermore, the other evidence, even in the absence of the lab report, presented was sufficient that the jury could have reasonably concluded that the defendant acted as the third perpetrator, who collected all the cash and the safe from the casino.
The facts of the case indicate inside knowledge of the casino’s procedures since the third robber, alleged to have been the *651 defendant, clearly knew the location of the cage in the back room and that the majority of the money was located inside the cage instead of the safe. The third 112robber did not hesitate or look around for the safe or anything else as he entered the room. Skipping the safe, he went directly to the cage, an unlikely place for the majority of the business’s money to be stored. Then, as he turned to the safe, he simply picked it up and left the room with it. He already knew it was small and light enough that he could simply carry it with him to open at another location. As security guard for the casino, the defendant knew where the money was kept, and the surveillance video of the third perpetrator’s actions indicate someone with that knowledge.
Smith, the driver, testified that the defendant was not only involved, but because he had worked there, he planned the robbery and insisted on being the one to collect the money. This testimony was consistent with the actions of the third perpetrator, as seen in the surveillance video. Smith’s testimony about the clothing, the red bandana, and the latex gloves that the defendant wore, as well as the black handgun that he carried, was also confirmed by the surveillance video. Smith’s credibility was an issue for the jury as fact finder, and as noted above, the jury’s decision to credit Smith’s testimony should not be disturbed on appeal.
Further, the defendant’s own actions also provided evidence indicating his guilt. He attempted to erase evidence of his prints and DNA from his water cup and paperwork during police interviews. He told the police that he was at his girlfriend’s house asleep at the time the crime was committed, but then testified at trial that he lied. Again, it was the jury’s duty as fact finder to weigh the credibility of his testimony.
| isThe evidence presented at trial, viewed under the Jackson standard, was sufficient to support the conviction of armed robbery pursuant to La. R.S. 14:64. This assignment of error therefore is without merit.

Ineffective Assistance of Counsel

Appellate counsel’s first assignment of error asserts that the defendant was prejudiced by ineffective assistance of counsel when his trial attorney did not object to the testimony of Audra Williams related to DNA analysis that she did not perform. After acknowledging that Audra Williams testified instead of the analyst who actually performed the tests, appellate counsel argues that the certified lab report differed from the report disclosed in discovery. He further argues that the lab report had mistakes in it regarding the DNA found in the paintball mask that linked the defendant to the crime. Additionally, appellate counsel argues that the testifying analyst could not explain the mistakes or inconsistencies regarding what parts of the latex glove were tested for DNA. Finally, appellate counsel asserts that Williams’ testimony was improperly admitted.
Similarly, the defendant’s first pro se assignment of error asserts the state’s certificate was not compliant with La. R.S. 15:499, because the analyst who actually conducted the tests did not sign the certificate. He further asserts that he was prejudiced by ineffective assistance of counsel when trial counsel failed to object to hearsay testimony from Williams, who had no part in the testing of evidence, in effect, violating his Sixth Amendment right to confrontation.
|14As a general rule, a claim of ineffective is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is *652 because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 980. State v. Ellis, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App. 2 Cir. 9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires that his conduct be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to the trial court’s judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App. 2 Cir. 4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.
Once the attorney’s performance is found to have been deficient, the defendant must show that counsel’s deficient performance prejudiced his | ^defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove the deficient performance caused him an actual prejudice so severe that, but for his counsel’s deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2d Cir. 4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
Ineffective assistance claims must both identify specific acts or omissions by counsel and state how these actions resulted in actual prejudice so severe that the defendant was denied a fair trial. Strickland, supra; State v. Jordan, 35,643 (La.App. 2d Cir. 4/3/02), 813 So.2d 1123, writ denied, 2002-1570 (La.5/30/03), 845 So.2d 1067.
Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), holds that the confrontation clause of the Sixth Amendment acts as an absolute bar on the admission of all out-of-court testimonial evidence unless (1) the witness who made the statement is unavailable to testify in court, and (2) the defendant had a prior opportunity to cross-examine the witness. Id. at 68, 124 S.Ct. at 1374; State v. Smith, 2004-3140 (La.6/24/05), 906 So.2d 391. An analyst’s report and certification regarding forensic evidence is considered a testimonial statement and is subject to confrontation clause requirements. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). If the report and certification are presented as evidence, then the person called for testimony |1fiand cross-examination on the evidence must have conducted or observed the tests on which the report and certification are based. Bullcoming v. New Mexico, - U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).
In Melendez-Diaz, the court recognized that some states have “Notice and Demand Statutes” that do not violate the confrontation clause because they do not shift to the defendant the burden to call the testing analyst to trial.
*653 La. R.S. 15:499 provides that criminal laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certifícate of the person in charge of the facility.[1] A party introducing a certificate of analysis under La. R.S. 15:499 must provide written notice of intent to offer proof by certificate at least 45 days prior to trial. La. R.S. 15:501. The defendant may then demand that the person who conducted the examination and analysis testify by timely filing a written demand within 30 days of the notice of intent. Id. If the certificate and notice comply with La. R.S. 15:499 and 15:501, then the certificate is admissible and considered prima facie evidence of the facts provided. La. R.S. 15:500. However, if the defendant properly demands the testimony of the analyst who performed the tests, then the certificate is not prima facie evidence and the analyst must testify to establish the test results. La. R.S. 15:501.
In State v. Cunningham, 2004-2200 (La.6/13/05), 903 So.2d 1110, the Louisiana Supreme Court found that La. R.S. 15:501 is a “notice and demand statute.” If the prosecution complies with La. R.S. 15:499 et seq., then the certificate and report are admissible and the defendant must make a timely written demand that the analyst testify, or the defendant waives his Sixth Amendment right under the Confrontation Clause. State v. Simmons, 2011-1280 (La.1/20/12), 78 So.3d 743; State v. Dukes, 46,029 (La.App. 2d Cir. 1/26/11), 57 So.3d 489, writ denied, 2011-0443 (La.3/2/12), 83 So.3d 1033.
Confrontation rights claims are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674(1986); State v. Robinson, 2001-0273 (La.5/17/02), 817 So.2d 1131.
The record indicates that the state followed the proper procedure and gave notice pursuant to La. R.S. 15:499, et seq., in its September 10, 2010, supplemental discovery response. Trial' counsel did not subsequently demand that the testing analysis testify.
As explained in the facts section, when the state moved to introduce the report, trial counsel did object to its admission on grounds that the report being submitted for admission was not the same as the report provided to the defense during discovery. The state explained that the original certified lab report had already been introduced into evidence at Bell’s trial, and a copy of this report was provided to the defense in discovery. The state asked the lab to provide another certified copy of the original report for admission into evidence at the defendant’s trial. That additional certified 11sreport states that it is a reprint of the original report issued on August 30, 2010. On comparison of the two versions of the report, trial counsel found no significant and relevant differences between the two versions of the lab report. The report was admitted without further objection.
We also recognize that the state did not rely solely on the lab report. Rather, it called Williams, an expert witness, who was the testing analyst’s supervisor. Williams testified at length about DNA, the lab’s methods for preserving the evidence, processing samples, and reducing contamination by foreign DNA. We note that the test analyst no longer worked for the lab and had moved out of state. However, Williams prepared the original DNA lab report and analysis using the results, *654 notes, and pictures provided by the test analyst.
The defendant’s claims of mistakes and inconsistencies in the lab report are not sufficiently supported by the record. Further, the defendant fails to show that he would have been less prejudiced had the testing analyst testified about the DNA test results that connected him to the crime. Additionally, the defendant fails to prove that trial counsel’s performance was below the acceptable standard based on his allegation that she failed to challenge the lab’s DNA testing methods and results in this case.
The defendant has not proven that his trial counsel’s performance prejudiced him in a way that deprived him of his right to a fair trial. There is no showing that had his trial counsel objected and had the testing analyst testified, the outcome would have been any different. Additionally, as noted in the previous assignment, the evidence was sufficient to convict the 119defendant of armed robbery, even in the absence of the DNA analysis at issue.
The defendant has not met his burden pursuant to Strickland v. Washington, supra, of proving that his counsel’s performance was deficient and that as a result, he was deprived of a fair trial. This assignment of error bears no merit.

Excessiveness of Sentence

Both appellate counsel and the defendant argue that the trial court erred in imposing an excessive sentence. Appellate counsel argues that the 60-year sentence is excessive and unreasonable punishment without opportunity for rehabilitation, because the defendant is only 23 years old, with no prior arrests or convictions, previously held three jobs to support his family, and had honorably served in the Marine Corps, and had a good community reputation and support. The defendant, pro se, argues that the trial court did not adequately assess the factual basis of his role in the offense, his personal history, or his lack of a criminal record. More specifically, he asserts that he did not tie up the victims, point guns at them, or threaten them. He states that he was not the leader in the robbery, and that he was only following orders.
As stated in the first assignment of error discussed above, armed robbery is the taking of anything of value, belonging to another, from the person of another or another’s immediate control, by the use of force or intimidation, while the perpetrator is armed with a dangerous weapon. La. R.S. 14:64(A). Whoever commits the crime of armed robbery shall be |2nimprisoned at hard for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B).
The trial court is given a wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App. 2d Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2d Cir. 9/21/11), 73 So.3d 473. On review, an appellate court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App. 2d Cir. 9/21/11), 73 So.3d 1021. Intertwined with our review of a sentence for excessiveness is our review of the record to ensure that the trial court complied adequately with La. C. Cr. P. art. 894.1 and accorded proper weight to all relevant sentencing factors. State v. Smith, 433 So.2d 688 (La.1983).
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines estab *655 lished in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App. 2d Cir. 11/2/11), 77 So.3d 1052. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. Pr. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the 1 ⅞1 article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App. 2 Cir. 9/21/11), 73 So.3d 471; State v. Tatum, 47,292 (La.App. 2 Cir. 8/15/12), 103 So.3d 550. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matter be given any particular weight at sentencing. State v. Tatum, supra, State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App. 2 Cir. 11/2/11), 78 So.3d 799.
The second portion of the sentence requires that a determination be made regarding the constitutional excessiveness of a sentence. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Tatum, supra; State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Washington, 46,568 (La.App. 2 Cir. 9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625.
Under La. R.S. 14:64(B), the defendant could have been sentenced to as many as 99 years without benefit of probation, parole, or suspension of sentence. However, even sentences within statutory limits may be reviewed for excessiveness. La. Const. Art. 1, § 20; Art. 5, § 5; State v. Smith, supra. There is no proportionality guarantee in noncapital cases unless the reviewing court finds the sentence is grossly disproportionate to the circumstances of the offense. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in which the Court ruled “the Eighth Amendment contains no proportionality guarantee.” Accord, State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, fn. 2, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
The defendant’s 60-year sentence falls within the statutory range pursuant to La. R.S. 14:64(B). As noted by the trial court in his sentencing colloquy, the defendant was manifestly cruel to the victims while robbing them at gunpoint. It also found *656 that he used his skills as a Marine, as well as his knowledge of the casino that was entrusted to him as the casino Insecurity guard, to plan, organize, and supervise the armed robbery. The trial court found the defendant knowingly put people under threat of death or great bodily harm and that there was a significant and permanent economic loss of over $21,000. The trial court carefully considered the facts of this case in light of the sentencing guidelines.
Acknowledging that the defendant was a first-time offender with dependents, the trial court found that his actions warranted that imposition of 60 years’ imprisonment without benefits. The trial court sufficiently articulated a basis for such a lengthy sentence, after considering the severity of the crime, the harm to the victims, the permanent economic loss, and the defendant’s role as mastermind of the robbery.
After a thorough review of the record, we find that the trial court gave proper consideration to all sentencing factors. The severity of the defendant’s sentence does not shock the sense of justice and is not a needless infliction of pain and suffering. This assignment is therefore without merit.
CONCLUSION
For these reasons, the conviction and sentence of the defendant, Demarcus Clark, are affirmed.
AFFIRMED.

. This language was changed slightly by Act. No. 69 of the 2012 Regular Legislative Session, to require that the certificate be provided by the person making the examination or analysis.